IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| COLLEEN RYAN, | § | |
| | § | No. 493, 2024 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below:  Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | C.A. No. N24C-07-161 |
| SEA COLONY RECREATIONAL | § | |
| ASSOCIATION, INC. | § | |
| | § | |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted:  May 21, 2025<br/>Decided:    July 28, 2025

Before **VALIHURA**, **LEGROW**, and **GRIFFITHS**, Justices.

Upon appeal from the Superior Court of the State of Delaware.  **REVERSED**.

David C. Malatesta, Jr., Esquire, SHELSBY & LEONI, Wilmington, Delaware, *Attorney for Appellant*.

Sarah B. Cole, Esquire, MARSHALL DENNEHEY P.C., Wilmington, Delaware, *Attorney for Appellee*.

**LEGROW**, Justice:

The plaintiff, a participant in a recreational event, was injured in a parking lot owned by the defendant. Before the event, the plaintiff signed a liability waiver that applied to the event organizer, its employees, volunteers, and other agents. Upon arrival at the event, the plaintiff was instructed to park in the defendant's lot. The relationship between the event organizer and the parking lot owner is not clear from—or even directly addressed in—the pleadings.

The Superior Court granted judgment on the pleadings to the parking lot owner, holding that it was apparent from the pleadings that the parking lot owner was the event organizer's agent. At the pleading stage, however, the court was required to draw all reasonable inferences in the plaintiff's favor. Because the existence of an agency relationship was not the only reasonable inference to be drawn from the pleadings, the court erred in entering judgment in the defendant's favor.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2022, Plaintiff-Below, Appellant Colleen Ryan and her family were in Bethany Beach, Delaware to participate in the Operation SEAs the Day Warrior Beach Week ("Warrior Beach Week") parade and celebration, which was sponsored by Operation SEAs the Day, Inc. ("Seas the Day").[1] Upon arrival,

---

[1] App. to Opening Br. at A07 ¶6 (Complaint) [hereinafter "A__" refers to the Appendix to Appellant's Opening Br.]; A14 (Waiver).

Ryan was directed to park in a parking lot owned by Defendant-Below, Appellee Sea Colony Recreational Association, Inc. ("Sea Colony"), located on the corner of Westway Drive and Route 1, in Bethany Beach.[2] After parking in the designated lot, Ryan exited her vehicle and walked through an adjacent grassy area where she tripped in a hole obscured by the grass. Ryan fell and severely twisted her ankle.[3]

Before arriving for Warrior Beach Week, Ryan signed a participant liability waiver on August 4, 2022, which stated, in relevant part:

> The undersigned recognizes that Operation Seas the Day, Inc. has not undertaken any duty or responsibility for his or her safety and the undersigned agrees to assume the full responsibility for all risk of bodily injury, death, disability, and property damage as a result of participating in the Warrior Beach Week. The undersigned recognizes that these risks include: the risks from slips and falls . . . and attendance at the various other events available during the above week.
>
> . . .
>
> By my signature, I hereby surrender any right to seek reimbursement from Operation Seas the Day, Inc. and its directors, officers, employees, volunteers and other agents for injury sustained and liability incurred during my participation in the activity described above . . .
>
> . . .
>
> I KNOWINGLY AND FREELY ASSUME ALL SUCH RISKS, both known and unknown, EVEN IF ARISING FROM THE

---

[2] A07 ¶7 (Complaint).

[3] A07 ¶8 (Complaint).

NEGLIGENCE OF THE RELEASEES or others and assume full responsibility for my participation.[4]

On July 18, 2024, Ryan filed a complaint in the Superior Court alleging that Sea Colony was negligent in maintaining and caring for the parking lot.[5] Ryan sought damages for "personal injuries, pain and suffering, past and future medical expenses, mental anguish, loss of enjoyment and out-of-pocket expenses, court costs and any other relief the Court finds just."[6]

On September 10, 2024, Sea Colony answered Ryan's complaint and asserted as an affirmative defense that Ryan waived her claims by signing the participant liability waiver.[7] Sea Colony simultaneously moved for judgment on the pleadings based on the signed waiver.[8] Ryan opposed that motion, contending that the waiver was ambiguous because Sea Colony was not specifically mentioned in it, Sea Colony was not a recognized agent of Seas the Day, and the injuries were outside the waiver's scope because Ryan was not injured while participating in the event.[9] On October 28, 2024, the Superior Court granted the motion for judgment on the pleadings, finding that the waiver was unambiguous, it applied to Sea Colony

---

[4] A14 (Waiver).

[5] A06 (Complaint).

[6] A09 (Complaint).

[7] A10–13 (Sea Colony's Answer to the Complaint).

[8] A15 (Mot. for J. on the Pleadings).

[9] A21–23 (Resp. to the Mot. for J. on the Pleadings).

because it was an agent of Seas the Day, and Ryan's injuries fell within the waiver's scope.[10]

Ryan moved for reargument, reasserting her previous arguments that Sea Colony was not named or listed in the participant waiver and was not an agent of Seas the Day. Ryan also provided new information in that motion—that she was a "registered guest at the Sea Colony property" at the time of the incident.[11] On November 12, 2024, the Superior Court denied Ryan's motion for reargument, reaffirming all its previous holdings regarding the waiver's ambiguity and scope, as well as the existence of an agency relationship between Seas the Day and Sea Colony.[12] Ryan timely appealed the Superior Court's October 28, 2024 order granting Sea Colony's motion for judgment on the pleadings and its November 12, 2024 order denying reargument.[13]

## II.  STANDARD OF REVIEW

"In the context of a motion for judgment on the pleadings, the court accords the party opposing a motion for judgment on the pleadings the same benefits as a

---

[10] *Ryan v. Sea Colony Inc.*, 2024 WL 4625166, at *1–2 (Del. Super. Oct. 28, 2024), r*eargument denied*, 2024 WL 4751561 (Del. Super. Nov. 12, 2024) (Del. Super. Oct. 28, 2024) [hereinafter "Super. Ct. Order"].

[11] A29 (Mot. for Reargument).

[12] *Ryan v. Sea Colony Inc.*, 2024 WL 4751561, at *1 (Del. Super. Nov. 12, 2024) [hereinafter "Super. Ct. Order on the Mot. for Reargument"].

[13] D.I. 1 (Notice of Appeal); D.I. 5 (Amended Notice of Appeal).

party defending a motion to dismiss."[14]  A reviewing court must accept the truth of all well-pleaded facts and draw all reasonable factual inferences in favor of the non-moving party.[15]  "Judgment on the pleadings may be entered only where the movant is entitled to judgment as a matter of law."[16]  It follows that the grant of a motion for judgment on the pleadings "'presents a question of law, which we review *de novo,*' to determine whether the court committed legal error in formulating or applying legal precepts."[17]

### III.    ANALYSIS

The Superior Court held that the waiver applied to Ryan's claims because Sea Colony was an agent of Seas the Day.  In its order granting the motion for judgment on the pleadings, the Superior Court concluded that an agency relationship existed as a matter of law, noting that there is "no dispute about [the] fact" that "the parking lot was being used as parking for the [Warrior Beach Week] event."[18]  The Superior Court found that, because Ryan was not a trespasser in the parking lot, Sea Colony was Seas the Day's agent.

---

[14] *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1121 (Del. 2022) (citing *Catlin Specialty Ins. Co. v. CBL & Assocs. Properties, Inc.*, 2017 WL 4784432, at *5 (Del. Super. Sept. 20, 2017)).

[15] *Id.*

[16] *W. Coast Opportunity Fund, LLC v. Credit Suisse Sec. (USA), LLC*, 12 A.3d 1128, 1131 (Del. 2010) (citing *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, LP,* 624 A.2d 1199, 1205 (Del.1993)).

[17] *Id.* (quoting *Desert Equities*, 624 A.2d at 1204).

[18] Super. Ct. Order at *2.

Addressing the motion for reargument, the Superior Court clarified that its holding as to agency rested on the fact that Ryan "was in Bethany Beach to participate in [Warrior Beach Week]" and was "directed to park in the designated overflow lot provided by Sea Colony."[19] The court stated that "it is apparent that both Sea Colony, by accepting 'overflow' traffic, and Seas the Day, by directing traffic to Sea Colony's 'overflow' parking lot, manifested their assent to a principal/agent relationship."[20]

The complaint alleges that Ryan was directed to park in the Sea Colony parking lot, though it does not identify who directed her to do so.[21] On appeal, Ryan contends that the Superior Court erred in finding that an agency relationship existed between Sea Colony and Seas the Day based solely on the fact that she was directed to the Sea Colony parking lot.[22] Ryan argues that the Superior Court should have considered other plausible explanations, such as that Sea Colony granted Seas the Day a license to use the lot or that the lot was open to the public at the time.[23]

The question on appeal is whether the allegations in the complaint permitted a reasonable inference that any relationship existed between Sea Colony and Seas

---

[19] Super. Ct. Order on the Mot. for Reargument at *2.

[20] *Id.* at *3.

[21] A07 ¶7 (Complaint).

[22] Opening Br. at 14.

[23] *Id.* at 16.

the Day other than an agency relationship.[24]  "An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent."[25]  This Court has explained that:

> The relevant factors to consider include 'the extent of control, which, by the agreement, the master may exercise over the details of the work;' 'whether or not the one employed is engaged in a distinct occupation or business;' and 'whether or not the parties believe they are creating the relation of master and servant.'[26]

The Superior Court's analysis did not address these factors or explain why an agency relationship was the only reasonable inference to be drawn from the pleadings, as opposed to a more limited contractual, arm's-length relationship.  The determination of whether an agency relationship exists typically is a question of fact.[27]  A contract or license between two parties does not necessarily create an agency relationship between them.[28]

---

[24] Because we reverse the Superior Court's conclusion regarding agency, we do not reach Ryan's argument on appeal relating to the waiver's scope.  The Superior Court may consider the waiver's scope on remand with a more developed factual record.

[25] *Fisher v. Townsends, Inc.*, 695 A.2d 53, 57 (Del. 1997) (quoting *Sears Mortgage Corp. v. Rose,* 634 A.2d 74, 79 (N.J. 1993)).

[26] *WaveDivision Holdings, LLC v. Highland Cap. Mgmt., L.P.*, 49 A.3d 1168, 1177 (Del. 2012) (quoting *Fisher*, 695 A.2d at 59); *see also* Restatement (Third) of Agency § 1.01 (2006) ("*Elements of agency.* As defined by the common law, the concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person.").

[27] *Fisher*, 695 A.2d at 61 ("It is the actions taken by the parties, not the terms used in the contract, that are dispositive in determining whether they were principal and agent respectively.") (citing *Gooden v. Mitchell,* 21 A.2d 197, 201 (Del. Super. 1941)).

[28] *See Fisher*, 695 A.2d at 59 (discussing the difference between agent-independent contractors and non-agent independent contractors); *see also Argoe v. Com. Square Apartments Ltd. P'ship*,

Ryan emphasizes that the waiver does not specifically name Sea Colony, but that fact alone is not dispositive, since the waiver includes Seas the Day's agents, and it is possible that Sea Colony and Seas the Day had formed an agent-principal relationship. But the pleadings do not contain facts that would allow the trial court to evaluate the extent of control that Seas the Day had over Sea Colony, whether Sea Colony was acting on Seas the Day's behalf, or whether the parties were acting as "master and servant."[29] Indeed, Sea Colony's motion for judgment on the pleadings stated that "the Sea Colony parking lot was voluntarily being used for overflow parking *by Operation SEAs the Day* for invitees such as Plaintiffs."[30] This allegation permits the inference that Seas the Day controlled the lot and that Sea Colony had no involvement on the day of the event other than providing a license to Seas the Day for the lot's use.

Likewise, the pleadings did not incorporate the existence or terms of any contract between Sea Colony and Seas the Day, nor did they allege other facts that would elucidate whether the parties had an agency relationship. And although the Superior Court emphasized the fact that Ryan allegedly "was directed to park in the

---

745 A.2d 251, 255 (Del. Super. 1999) (discussing premises liability when a landlord uses an agent to maintain real property for a lessor); *compare Fisher*, 695 A.2d at 57 (defining agency), and Restatement (Third) Of Agency § 1.01 (2006) (defining agency) *with Timmons v. Cropper*, 172 A.2d 757, 759 (Del. Ch. 1961) (defining property license).

[29] *WaveDivision Holdings, LLC*, 49 A.3d at 1177.

[30] A17 (Mot. for J. on the Pleadings) (emphasis added).

8

designated overflow lot provided by Sea Colony," the identity of the person who directed Ryan to do so was not contained in the pleadings. There were no other manifestations of an agency relationship alleged in the complaint.

Given the dearth of facts regarding the existence of an agency relationship, there were other reasonable inferences that the trial court could have drawn from the pleadings. The existence of those reasonable inferences was enough to defeat Sea Colony's motion, particularly in connection with an affirmative defense for which Sea Colony bore the burden of proof.[31]

## IV. CONCLUSION

For the foregoing reasons we **REVERSE** the Superior Court's decision granting Sea Colony's motion for judgment on the pleadings and **REMAND** for further proceedings consistent with this Opinion. Further development of the factual record will allow the court or jury to determine whether the waiver covered Sea Colony and whether Ryan's injuries fell within the scope of the waiver.

---

[31] *See Ravindran v. GLAS Tr. Co. LLC*, 327 A.3d 1061, 1084 (Del. 2024); *Desktop Metal, Inc. v. Nano Dimension Ltd.*, 2025 WL 904521, at *22 (Del. Ch. Mar. 24, 2025) ("a party asserting an affirmative defense bears the burden of proof.").