**Michael FALCONI, Appellant Below, Appellant,**

v.

**COOMBS & COOMBS, INC., Appellee Below, Appellee.**

**No. 387, 2005.**

Supreme Court of Delaware.

Submitted: April 26, 2006.
Decided: July 11, 2006.

---

24. *Id.*

Perry F. Goldlust, Esquire, of Aber, Goldlust, Baker & Over, Wilmington, Delaware for Appellant.

Susan A. List, Esquire, of Tybout, Redfearn & Pell, Wilmington, Delaware for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice.

Claimant Michael Falconi appeals from a judgment of the Superior Court upholding a decision of the Industrial Accident Board in favor of Coombs & Coombs, Inc. (d/b/a Certified Auto). The Board determined that Falconi was ineligible for workers' compensation because he did not prove he was an employee of Certified Auto, rather than an independent contractor. Falconi contends that the Board's factual findings are not supported by substantial evidence, and that the Board did not apply the appropriate legal standard to determine whether he was an employee or an independent contractor. We find substantial evidence in the record to support the Board's factual findings. We hold, however, that the Board erred in its application of the law to the facts of this case.

Applying the Restatement (Second) of Agency Section 220 to the facts of this case, Falconi was an employee eligible for worker's compensation benefits. Accordingly, we reverse the judgment of the Superior Court.

## I. Background

Joseph Coombs ("Coombs") and his wife Carol Coombs own Certified Auto, an automotive service station in Wilmington, Delaware. Mr. and Mrs. Coombs are both officers and salaried employees of the corporation. There are also two part-time laborers who work for Certified Auto, the son of a friend and a son-in-law. Customers pay $68 per hour regardless of who works on a car.

Mr. and Mrs. Coombs met Falconi at a restaurant where he worked as a cook. The two men discussed Falconi's desire to change jobs and his recent experience in auto repair. Coombs told Falconi he would "bring him into the business to see how he would work out" during a test period, with the possibility of allowing him to take over the business. Mrs. Coombs kept records of payments made to Falconi in a notebook under the heading "Subcontractor." Falconi would receive cash for his time at work, but no pay when he was not at work due to illness, holidays, or vacation.

Falconi began working at Certified Auto in September 2003. Certified Auto listed Falconi as "contracted labor" on its tax forms and sent Falconi a Form 1099 for 2003.[1] However, Certified Auto also provided Falconi a uniform with a logo for Certified Auto, just as it did for other employees. The sequence of Falconi's work on cars at Certified Auto was a func-

---

1. "A form 1099–MISC is used to report payments made in the course of a trade or business to another person or business who is not an employee." *12.2 Small Business/Self–Employed/Other Business: Form 1099-MISC & Independent Contractors,* at http://www.irs.gov/faqs/faq12–2.html.

tion of when customers made their appointments. Coombs assigned cars needing repair work to Falconi, and trusted Falconi's judgment in the diagnosis of car problems. If Falconi was unfamiliar with a specific car problem, Coombs would advise him. Coombs also would occasionally send Falconi on errands for Certified Auto to get parts for repairs. The costs of these parts were passed on to the customer. Falconi used his own tools to work on the cars, but it is undisputed that mechanics generally have their own tools as is the custom in the automotive repair business.

Falconi's alleged workplace related injury took place on January 28, 2004, after which he did not return to work at Certified Auto. Falconi filed a petition to determine compensation due with the Board and a hearing was held on June 10, 2004, during which Coombs and Falconi testified.

■■■ The Board recited the evidence before it, but did not make express findings of fact except for those it found essential to its legal holding. To determine Falconi's eligibility for workers' compensation, the Board focused on the nature of Falconi's employment relationship with Certified Auto. The Board recognized that only employees, not independent contractors, are eligible to receive workers' compensation for work-related injuries.[2] The burden of proof in a workers' compensa-

tion case is upon the moving party.[3] Generally, the quantum of proof for elements in a workers' compensation case is a preponderance of the evidence.[4]

In the Board's view, specific facts supported its ruling that Falconi was an independent contractor. They were: (1) the notebook recording Falconi's wages was labeled "Subcontractor," (2) Certified Auto did not withhold payroll taxes, (3) Certified Auto sent a 1099 tax form to Falconi, (4) Falconi usually did not need Coombs to tell him exactly what was wrong with a car or how to fix it, (5) Falconi used his own tools and (6) Falconi had control over his own schedule because "it didn't seem that Coombs was requiring Claimant to ask permission[,] merely that he wanted to know when Claimant was not going to be available so as to make any necessary appointment scheduling adjustments."

The Board also found other specific facts which would support a finding that Falconi was an employee of Certified Auto. They were: (1) there was no written agreement or contract, (2) Falconi had no business license and failed to hold himself out as a business, (3) Certified Auto did not hold a bid competition for any independent contractor, (4) Falconi's wages were fixed by the days he worked rather than in accordance with work he completed, (5) Falconi's wages were paid routinely, rather than

2. *Weiss v. Security Storage Co.*, 272 A.2d 111, 114 (Del.Super.1970) (excluding independent contractors from the definition of "employee" for purposes of the Workers' Compensation Act).

3. *Strawbridge & Clothier v. Campbell*, 492 A.2d 853, 854 (Del.1985) (cited by *Christiana Care v. Taggart*, Del.Super., C.A. No. 02A-08-009 JRJ (2004); *Downes v. Phoenix Steel Corp.*, Del.Super., C.A. No. 99A-08-006, 1999 WL 458797 (1999)).

4. *Histed v. E.I. Du Pont de Nemours & Co.*, 621 A.2d 340, 343 (Del.1993) ("to collect

workers' compensation benefits under 19 Del. C. § 2304, [claimant] must prove by a preponderance of the evidence that she suffered a personal injury resulting from an accident occurring within the course and scope of her employment") (citing *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del.1965); *Weaver v. Sea Watch Intern.*, Del.Super., C.A. No. 91A-12-003, Graves, J., slip op. at 1 (May 18, 1992)); *Goicuria v. Kauffman's Furniture*, 706 A.2d 26 (Del.1998). *See e.g., General Motors Corp. v. Freeman*, 157 A.2d 889, 892 (Del.Super.Ct.1960). *C.f., Diamond Fuel Oil v. O'Neal*, 734 A.2d 1060, 1065 (Del.1999).

as a lump sum, (6) Falconi never submitted an invoice or bill for his services, (7) Coombs told Falconi the order in which to fix each car he assigned to him, (8) Coombs sent Falconi to pick up parts, (9) Coombs advised Falconi on automotive problems he did not know how to fix, and (10) it is industry custom for an auto mechanic employee to use his own tools.

Notwithstanding these specific findings, the Board concluded that, under the totality of the circumstances, Falconi had not shown by a preponderance of the evidence that he was an employee of Certified Auto rather than an independent contractor. The Board denied Falconi's petition for workers' compensation benefits, the Superior Court affirmed, and this appeal followed.

## II. Discussion

■ We review the legal conclusions of the Board *de novo*.[5] Whether someone is an employee or an independent contractor is a question of law that we review *de novo*.[6] We will accept the Board's findings of fact if there is substantial evidence to support them.[7] Substantial evidence is more than a mere scintilla, but less than a preponderance of the evidence.[8] Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[9] The appel-

late court does not weigh the evidence, determine questions of credibility, or makes its own factual findings.[10]

## A. There is Substantial Evidence to Support the Board's Factual Findings.

■ We first examine whether there was substantial evidence to support the Board's findings of fact. It is the function of the Board to determine the credibility of the witnesses before it. Testimony was presented to support each finding of fact made by the Board. We conclude that the factual findings of the Board are supported by substantial evidence.

## B. When a Single Business Owner is an Alleged Employer, the Board Should Apply Restatement (Second) of Agency § 220.

■ We next address the appropriate test to apply where the issue is whether the claimant is an employee or independent contractor of a single business. The appropriate legal standard is critical to a correct determination of workers' compensation liability, because an "employee" must accept workers' compensation as an exclusive remedy for personal injury suffered on the job.[11] "Employee" is defined as "every person in service of any corporation ..., association, firm or person, ex-

---

**5.** *Scheers v. Independent Newspapers,* 832 A.2d 1244, 1246 (Del.2003).

**6.** The existence of an agency relationship depends on the presence of factual elements, but is a legal concept. *Lang v. Morant,* 867 A.2d 182, 186 (Del.2005) (citing RESTATEMENT (SECOND) OF AGENCY § 1 cmt. (1)(b)). *C.f., Murson v. Henry Francis DuPont Winterthur Museum, Inc.,* 782 A.2d 266 (Del.2001) ("It is settled law that a property owner is not liable for injuries to the employee of an independent contractor, unless the owner retains active control over the manner in which the work is carried out and the methods used. The same is true for a general contractor that

retains no active control over a subcontractor.").

**7.** *A. Mazzetti & Sons, Inc. v. Ruffin,* 437 A.2d 1120 (Del.1981).

**8.** *Olney v. Cooch,* 425 A.2d 610, 614 (Del. 1981).

**9.** *Jenkins v. News Journal,* 1994 WL 319013 (Del.Super.Ct.1994).

**10.** *Johnson v. Chrysler Corp.,* 213 A.2d 64, 66 (Del.1965).

**11.** 19 Del. C. § 2304.

cepting those employees excluded by this subchapter, under any contract of hire, express or implied, oral or written, or performing services for a valuable consideration ..." [12] The Workers' Compensation Act further provides that "No contractor or subcontractor shall receive compensation under this chapter ..." [13]

In *Lester C. Newton Trucking Co. v. Neal,* this Court adopted four criteria to determine whether a worker is an "employee" for the purposes of workers' compensation: "(1) who hired the employee; (2) who may discharge the employee; (3) who pays the employee's wages; and (4) who has the power to control." [14] *Lester C. Newton* involved an appeal from the Industrial Accident Board, but the question was which of two businesses was the employer at the time of the employee's injury. In cases like this where there is only one alleged employer, the Superior Court has repeatedly recognized that the first two criteria of the *Lester C. Newton* test are not helpful. [15] Whether a worker is an independent contractor or an employee is determined by the facts and circumstances of each case, and the factor which has been given predominant consideration is the right to control. [16] An employer may not avoid liability for worker's compensation simply by classifying his employee as an independent contractor. [17]

In the context of determining vicarious liability for a tort, this Court has recognized the value of the Restatement (Second) of Agency as an aid in deciding whether an individual is an employee or independent contractor. In *Fisher v. Townsends, Inc.* [18] we stated:

> In determining whether one who acts for another is a servant or an independent contractor, this Court has recognized Section 220 of the Restatement (Second) of Agency as an authoritative source for guidance. The Restatement (Second) of Agency states that the following non-exclusive "matters of fact" are to be considered in deciding whether the actual tortfeasor is a servant or an independent contractor:
>
> (a) the extent of control, which, by the agreement, the master may exercise over the details of the work;
>
> (b) whether or not the one employed is engaged in a distinct occupation or business;
>
> (c) the kind of occupation, with reference to whether, in the locality, the

---

**12.** 19 Del. C. § 2301(9).

**13.** 19 Del. C. § 2311(a).

**14.** *Lester C. Newton Trucking Co. v. Neal,* 204 A.2d 393, 395 (Del.1964) (quoted by *H.O. Kline Transp., Inc. v. Bryson,* 558 A.2d 297 (Del.1989)).

**15.** *Rocha v. Keka Constr., Inc.,* Del.Super., C.A. No. 04A–07–002 ESB, Bradley, J. (2005); *Horsey v. Contractual Carriers,* 1988 WL 4741, at * 1 (Del.Super.Ct.); *Patterson v. Blue Hen Lines,* 1986 WL 2274, at * 1 (Del.Super.Ct.).

**16.** *Gooden v. Mitchell,* 21 A.2d 197, 201 (Del.Super.Ct.1941). *C.f. Anderson v. Airco, Inc.,* Del.Super., C.A. No. 02C–12–091, 2004 WL 2828208, Ridgely, P.J., at n. 84 ("The definition of employee, a term that has 'prob-

ably produced more reported cases than any definition of status in the modern history of law,' is conceptually more problematic [than 'employer.'] ") *(quoting* 3 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 60.01 (2003); *citing Harris v. Seiavitch,* 336 Pa. 294, 9 A.2d 375 (1939); Restatement of Agency (Second) § 220 (defining "servant" as a "person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.")).

**17.** *See Bryson v. H.O. Kline Transportation, Inc.,* 1987 WL 10538, at * 2 (Del.Super.Ct.), *aff'd by,* 558 A.2d 297 (Del.1989).

**18.** 695 A.2d 53 (Del.1997).

work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.[19]

The Restatement provides a comprehensive basis for analyzing the issue before us. We conclude that the Restatement (Second) of Agency § 220 ("Section 220") is well-suited in the workers' compensation context for determining whether a claimant is an employee or an independent contractor of a single business. Although the *Lester C. Newton* test remains applicable for guidance in any case involving two or more alleged employers, the Section 220 criteria should be applied when the issue is whether a claimant is an employee or independent contractor of a single business.

### C. The Factual Findings of the Board Show that Falconi was an Employee.

As noted above, the Board made sufficient factual findings to allow us to resolve the purely legal question raised in this appeal. Applying Section 220 to those facts, we conclude that Falconi was an employee, and therefore qualifies for workers' compensation from Certified Auto.[20]

Certified Auto was a business[21] engaged in automotive service[22] that hired Falconi to fix cars for an undefined period at a single location. Falconi was not hired to complete a finite number of tasks before leaving for another position with someone else.[23] Falconi did not hold himself out as

---

**19.** *Fisher v. Townsends, Inc.*, 695 A.2d at 59 (Del.1997) (quoting Restat.2d of Agency § 220(2) Definition of Servant) (citing *White v. Gulf Oil Corp.*, 406 A.2d 48, 51 (1979)). Delaware courts have defined an "independent contractor" as "one who is engaged to do work in an *independent* manner, accountable only as to the *results* obtained, and not subject to the control or supervision of the employer." *Rocha v. Keka Constr., Inc.*, Del.Super., C.A. No. 04A–07–002 ESB, 2005 WL 791362, Bradley, J. (2005) (citing *Gooden v. Mitchell*, 21 A.2d 197, 200 (Del.Super.Ct.1941)).

**20.** *See* Restat.2d of Agency, § 220 *comment h. Factors indicating the relation of master and servant.*

The relation of master and servant is indicated by the following factors: an agreement for close supervision or *de facto* close supervision of the servant's work; work which does not require the services of one highly educated or skilled; the supplying of tools by the employer; payment by hour or month; employment over a considerable period of time with regular hours; full time employment by one employer; employment in a specific area or over a fixed route; the fact that the work is part of the regular business of the employer; the fact that the community regards those doing such work as servants; the belief by the parties that there is a master and servant relation; an agreement that the work cannot be delegated.

**21.** *See* Restat.2d of Agency, § 220(2)(j) ("whether the principal is or is not in business.").

**22.** *See* Restat.2d of Agency, § 220(2)(h) ("whether or not the work is a part of the regular business of the employer").

**23.** *See* Restat.2d of Agency, § 220(2)(f) ("the length of time for which the person is employed"); *comment j. Period of employment and method of payment.*

The time of employment and the method of payment are important. If the time of em-

the owner of a distinct business.[24] Falconi never submitted an invoice seeking payment for services rendered and had no written contract. Falconi was not responsible for any unfinished work after the relationship ended. Simply put, Falconi's only livelihood was his job to fix cars at Certified Auto, as was the principal job of Coombs, another salaried employee of the business.

Although Falconi was skilled in fixing cars, Coombs was more skilled, and advised Falconi on how to repair them.[25] Coombs exercised substantial control over the details of Falconi's work.[26] Coombs told Falconi when to work on each car, and also would direct him to purchase car parts. Coombs provided Falconi with a Certified Auto uniform also worn by Coombs, and held Falconi out to the public as a person who, to all appearances, was an employee.

Falconi agreed to obey Coombs' general rules.[27] Falconi had to work on the cars between 8 a.m. and 6 p.m. at Certified Auto.[28] Falconi received a fixed payment of $80/day, $400/week on a time basis rather than based on how many cars he fixed or how much work he accomplished.[29] Even accepting that Falconi enjoyed the flexibility not to come to work, he was paid on a *per diem* basis rather than for his productivity or the results of his work.

Certified Auto provided the substantial instrumentalities, tools, and place of work.[30] Certified Auto provided the heavy equipment *(e.g.,* hydraulic lift, compressed air, tire changing equipment) and supplies *(e.g.,* oil, filters, lubricants, fluids). Falconi's work was done on premises Certified Auto controlled.[31] Even though Falconi

---

ployment is short, the worker is less apt to subject himself to control as to details and the job is more likely to be considered his job than the job of the one employing him. This is especially true if payment is to be made by the job and not by the hour. If, however, the work is not skilled, or if the employer supplies the instrumentalities, the workman may be found to be a servant.

24. *See* Restat.2d of Agency, § 220(2)(b) ("whether or not the one employed is engaged in a distinct occupation or business").

25. *See* Restat.2d of Agency, § 220(2)(d) ("the skill required in the particular occupation").

26. *See* Restat.2d of Agency, § 220(2)(a) ("the extent of control, which, by the agreement, the master may exercise over the details of the work").

27. *Id.*

28. *See* Restat.2d of Agency § 220 Definition of Servant.

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered: (a) the extent of control which, by the agreement, the master may exercise over the details of the work.

29. *See* Restat.2d of Agency, § 220(2)(g) ("the method of payment, whether by the time or by the job"); *comment j.*

30. *See* Restat.2d of Agency, § 220(2)(e) ("whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work"); *comment k. Ownership of instrumentalities.*

The ownership of the instrumentalities and tools used in the work is of importance. The fact that a worker supplies his own tools is some evidence that he is not a servant. On the other hand, if the worker is using his employer's tools or instrumentalities, especially if they are of substantial value, it is normally understood that he will follow the directions of the owner in their use, and this indicates that the owner is a master. This fact is, however, only of evidential value.

31. *See* Restat.2d of Agency, § 220 *comment l. Control of the premises.*

If the work is done upon the premises of the employer with his machinery by workmen who agree to obey general rules for the regulation of the conduct of employees, the inference is strong that such workmen are the servants of the owner, and this inference is not necessarily rebutted by the fact

also used his own tools, this fact has less import because the parties agree that it is the custom or standard practice for employee auto mechanics to use their own tools.

While Coombs believed Falconi was an independent contractor,[32] "[i]t is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other...."[33] Notwithstanding Coombs' belief, Falconi submitted to control by Certified Auto.

The totality of these factors show that Falconi's relationship with Certified Auto was that of an employee rather than an independent contractor. We conclude that the Board erred as a matter of law when it decided that Falconi failed to prove he was an employee eligible for workers' compensation benefits.

### III. Conclusion

The judgment of the Superior Court is REVERSED. This case is remanded for further proceedings consistent with this opinion.

---

that the workmen are paid by the amount of work performed or by the fact that they supply in part their own tools or even their assistants. If, however, the rules are made only for the general policing of the premises, as where a number of separate groups of workmen are employed in erecting a building, mere conformity to such regulations does not indicate that the workmen are servants of the person making the rules.

32. *See* Restat.2d of Agency, § 220(2)(i) ("whether or not the parties believe they are creating the relation of master and servant").

33. Restat.2d of Agency, § 220 *comment m. Belief as to existence of relation.*