# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MARIE REED, KAREN
CHEESEMAN, SIMEON HAHN,
JEFFREY RICHARDSON, and
MUJAHID NYAHUMA,

      Appellants,

      v.

DELAWARE DEPARTMENT OF
NATURAL RESOURCES AND
ENVIRONMENTAL CONTROL,

      Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. N22A-11-006 SKR

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Consideration of the Appellants' Appeal:*

### REVERSED in part, AFFIRMED in part, and REMANDED.

Kenneth T. Kristl, Esquire, WIDENER UNIVERSITY DELAWARE LAW SCHOOL, Wilmington, Delaware, *Attorney for Appellants*.

Devera B. Scott, Esquire, Esquire, Deputy Attorney General, DELAWARE DEPARTMENT OF JUSTICE, New Castle, Delaware, *Attorney for Appellee*.

**RENNIE, J.**

# INTRODUCTION

Before the Court is an appeal from a decision of the Environmental Appeals Board (the "Board"). In its decision, the Board dismissed a series of appeals from an order issued by the Secretary of the Delaware Department of Natural Resources and Environmental Control ("DNREC") for lack of standing. These appeals were brought by Marie Reed, Karen Cheeseman, Simeon Hahn, Jeffrey Richardson, and Mujahid Nyahuma (collectively, the "Appellants"),[1] who object to the order on environmental conservation grounds. Following written submissions by the parties and oral argument, the Court reverses in part, affirms in part, and remands the decision of the Board.

# FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 2021, the Secretary of DNREC issued Secretary's Order No. 2021-W/CCE-0026 (the "Secretary's Order"), which approved the issuance of two certifications: (1) a Subaqueous Lands Permit from the DNREC Wetlands and Waterways Section and (2) a Federal Consistency Certification from the DNREC Division of Climate, Coastal and Energy.[2] These certifications allow the Diamond

---

[1] The Appellants describe themselves as the "Delaware Community Benefits Agreement Coalition," but they had not satisfied the formalities required to proceed as an organization at the time that the papers were filed. Appellants' Opening Br. App. at A.70-71 ("Since the Organizational Appellant is not represented by counsel the Board must dismiss the appeal of the DCBAC.").

[2] More specifically, this Federal Consistency Certification came from the Division's Coastal Management Program.

State Port Corporation ("DSPC") to proceed with the building of a new container port on its property in Edgemoor, Delaware, along the Delaware River between Fox Point State Park and industrial facilities.[3]

On October 18, 2021, the Appellants filed a joint statement of appeal of the Secretary's Order with the Board. The Appellants argued that the Secretary of DNREC failed to consider likely environmental consequences of the proposed port construction, such as permanent destruction of shallow water habitats and detrimental changes to intertidal functions.[4]

On March 1, 2022, DNREC filed a motion to dismiss the appeal for the Appellants' lack of standing and lack of legal representation.[5]

On April 12, 2022, the Board held a public hearing by web conference on DNREC's motion to dismiss.[6] DNREC and several of the Appellants participated. At the conclusion of the hearing, the Board reached a unanimous decision that:

> grant[ed] DNREC's motion to dismiss, in part, dismissing the Delaware Community Benefits Agreement Coalition for lack of counsel . . . [and] allow[ed] individual appellants [to] proceed contingent upon presenting

---

[3] The Appellants' Opening Br. App. at A.1-10. The Secretary of DNREC was satisfied with the compensatory mitigation plan set forth for the proposed project, which "provides an adequate combination of direct in-kind replacement of lost habitat by the creation of new intertidal wetland habitat in the immediate area of the project, statewide fisheries' benefits by the incorporation of the Environmental DNA monitoring program and reconnects the impact local community to the Delaware River by means of enhancements to FPSP [Fox Point State Park]." *Id.* at A.7.

[4] Appellants' Opening Br. App. at A.11.

[5] Appellee Del. Dep't of Nat. Res. Envtl. Control's Mot. to Dismiss Ex. A.

[6] Appellants' Opening Br. App. at A.15 ("The purpose of today's Environmental Appeals Board hearing is for the consideration of motions to dismiss an appeal number 2021-07.").

individual affidavits or declarations aimed at establishing standing and individual amended statements of appeal within 30 days.[7]

On April 28, 2022, the Board issued a first order consistent with that decision.[8] Between May 25, 2022, and May 27, 2022, each of the Appellants submitted a separate, similarly phrased Statement of Appeal and Declaration to the Board.[9]

On June 17, 2022, DNREC filed a partial motion to dismiss the individual appeals with the Board, in which it argued that the Appellants had still failed to establish standing.

On July 26, 2022, the Board held a public hearing by web conference on DNREC's partial motion to dismiss.[10] DNREC and several of the Appellants participated. At the conclusion of the hearing, the Board voted unanimously to grant DNREC's motion to dismiss the individual appeals for lack of standing. On October 21, 2022, the Board issued a second order (the "Board's Order"), consistent with that decision, in which the Board dismissed the appeals for lack of standing.[11] The Board described its reasoning as follows:

---

[7] *Id.*

[8] *Id.* at A.68. This order extended the timeline for the Appellants to file individual statements of appeal and standing papers to thirty days from April 28, 2022. *Id.* ("Such filings shall be made within 30 days of the date of this Order.").

[9] *Id.* at A.73-93.

[10] *Id.* at A.94 ("The purpose of today's hearing is the consideration of the motions filed by various parties of the EAB appeals 2021-07, 08, 09 and 10. Those four appeals have been consolidated into one appeal process.").

[11] *Id.* at A.329 ("The appeals of the Individual Appellants are dismissed because they failed to carry their burden of establishing standing to prosecute the Appeal."). The Board's Order also (1) dismissed another appellant's Amended Motion of Appeal as untimely and (2) denied other

During deliberations, the Board found [1] that the Individual Appellants, failed to comply with the Board's Order to submit "Affidavits or Declarations designed to establish their basis for standing to prosecute the appeal" and [2] that their generic, largely identical assertions, are not sufficient to establish standing to bring an appeal before the Board.

During deliberations, the Board also found that each of the individual appellants failed to demonstrate that their alleged injuries are concrete as opposed to general dissatisfaction with the Project and the permitting process. In addition, the Board found that each of the Individual Appellants failed to demonstrate particularized injury or injury distinguishable from that of the general public. Many of the Appellants based their purported injury on residing in the vicinity of the proposed facility and noted that they may recreate less due to the facility. Such speculation, in the opinion of the Board, is an insufficient basis upon which to establish standing. The Board noted that an interstate highway and a previously developed industrial land exist between some Appellants' homes and the proposed facility and serve as a natural buffer.[12]

On November 18, 2022, the Appellants filed an appeal of the Board's Order with this Court pursuant to 7 *Del. C.* § 6009 and Superior Court Rule of Civil Procedure 72. The Appellants argue that the Board's Order should be reversed and remanded for legal error.[13] On January 18, 2023, the Appellants filed an opening brief in support of this appeal.[14]

---

appellants' Motion for Summary Judgment. *Id.* at A.329-30. Those findings of the Board are not reviewed in this limited appeal.

[12] *Id.* at A.326-27.

[13] Notice of Appeal.

[14] Appellants' Opening Br.

On February 7, 2023, DNREC filed a motion to dismiss the appeal.[15] On June 28, 2023, the Court denied DNREC's motion to dismiss.[16]

On August 15, 2023, DNREC filed an answer to the appeal.[17] On August 24, 2023, the Appellants filed a reply brief in support of the appeal.[18]

On January 5, 2024, the Court heard argument on the appeal. The matter is now ripe for review.

## STANDARD OF REVIEW

Upon an appeal from a decision of the Board, the Court reviews whether the Board's conclusions are supported by substantial evidence and free from legal error.[19] Substantial evidence is "more than a mere scintilla, but less than a preponderance of the evidence."[20] If the decision is supported by substantial evidence, the Court "must sustain the Board's decision even if such court would have

---

[15] Appellee Del. Dep't of Nat. Res. Envtl. Control's Mot. to Dismiss. On February 24, 2023, Appellants filed a brief in response to DNREC's motion to dismiss. Appellants' Resp. DNREC's Mot. to Dismiss. On March 10, 2023, DNREC filed a reply brief in support of its motion to dismiss. Reply Supp. DNREC's Mot. to Dismiss.

[16] *Reed v. Del. Dep't Nat. Res. & Envtl. Control*, 2023 WL 4290254, at *3 (Del. Super. June 28, 2023).

[17] Appellee's Answering Br.

[18] Appellants' Reply Br.

[19] *Booth v. Garvin*, 2019 WL 462486, at *2 (Del. Super. Feb. 6, 2019). The Court "accepts the Board's findings of fact if there is substantial evidence to support them." *Falconi v. Coombs & Coombs, Inc.*, 902 A.2d 1094, 1098 (Del. 2006).

[20] *Bon Ayre Land LLC v. Bon Ayre Cmty. Assoc.*, 2016 WL 747989, at *2 n.11 (Del. Feb. 25, 2016) (quoting *Falconi*, 902 A.2d at 1098). Substantial evidence has also been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Protecting Our Indian River v. Del. Dep't Nat. Res. & Envtl. Control*, 2015 WL 54616204, at *6 (Del. Super. Aug. 14, 2015).

6

decided the case differently if it had come before it in the first instance."[21] In this appellate review, the Court does not weigh evidence, determine credibility, or make findings of fact.[22] Ultimately, "[t]he Court may affirm, reverse, or modify the Board's decision."[23]

## LEGAL ANALYSIS

The Appellants raise two arguments in support of reversing and remanding the Board's Order: (1) the Board erred by dismissing the individual appeals of the Secretary's Order for lack of standing and (2) the Board erred by not holding a separate evidentiary hearing before issuing the Board's Order.[24] Conversely, DNREC argues that the instant appeal of the Board's Order should be dismissed because the Appellants failed to join a necessary party.[25] The Court will consider the parties' arguments in that order.

### A. Dismissal for Lack of Standing

The Appellants argue that the Board erred by determining that each of the individual Appellants lacked standing to appeal the Secretary's Order. The Appellants assert that they had standing because they each established that (1) they will suffer a redressable injury in fact that is fairly traceable to the certifications in

---

[21] *Protecting Our Indian River*, 2015 WL 5461204, at *6. The Court "will not substitute its judgment for that of the Board." *Id.*
[22] *Id.*
[23] 7 *Del. C.* § 6009(b).
[24] Appellants' Opening Br.; Appellants' Reply Br.
[25] Appellee's Answering Br.

7

the Secretary's Order and (2) their interests fall within the zone of interests protected by the Subaqueous Lands Act.[26]

DNREC argues that the Board properly dismissed the individual appeals for lack of standing. The Board made the Appellants' prosecution of the appeals contingent on filing, within thirty days after its April 28, 2022 order, (1) individual amended statements of appeal and (2) affidavits or declarations establishing bases for standing. When the Appellants failed to include proper bases for standing in those filings, DNREC argues, the Board had grounds to dismiss the appeals.[27]

In Delaware, "[a]ny person whose interest is substantially affected by any action of the Secretary may appeal to the Environmental Appeals Board within 20 days after receipt of the Secretary's decision or publication of the decision."[28] The Appellants filed an appeal of the Secretary's Order within twenty days after it was published.[29] Accordingly, the threshold question for the issue of standing is whether an interest held by each of the individual Appellants was "substantially affected" by the Secretary's Order.

To determine who qualifies as "substantially affected" for standing purposes, the Delaware Supreme Court has applied the United States Supreme Court's

---

[26] Appellants' Opening Br.; Appellants' Reply Br.
[27] Appellants' Reply Br.
[28] 7 *Del. C.* § 6008(a).
[29] In the Board's order dismissing that initial joint statement of appeal, the Board gave the Appellants an additional thirty days from April 28, 2022, to file individual amended statements of appeal. The Appellants filed individual amended statements of appeal within this time period.

*Association of Data Processing Service Organizations, Inc. v. Camp* test.[30]   Under

this test, a party's interest is "substantially affected" by an administrative agency

decision when there is "1) a claim of injury in fact; and 2) the person sought to be

protected is arguably within the zone of interest[s] to be protected or regulated by

the statute."[31]

### 1. Claim of Injury in Fact

First, each party must state a claim for an injury in fact, which is "the invasion

of a legally protected interest within the zone of interest[s] sought to be protected or

regulated by the statute."[32]   An injury in fact is (1) concrete and particularized and

(2) fairly traceable to the challenged action.[33]

The Appellants argue that they have stated claims for injuries in fact related

to imminent adverse consequences for their outdoor recreation activities in the area

near the proposed construction site due to pollution and increased truck traffic.[34]   In

contrast, DNREC argues that the Appellants have failed to state injuries in fact.[35]

---

[30] 397 U.S. 150 (1970); *Gannett Co. v. State*, 565 A.2d 895, 897 (Del. 1989) (citing *Data Processing*, 397 U.S. at 153-54); *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994) (same).
[31] *Oceanport Indus.*, 636 A.2d at 903.   For instance, "the interests of Delaware citizens in the preservation of publicly owned resources" is too general to qualify as a substantially affected interest. *Id.* at 901.
[32] *Id.* at 904.
[33] *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).
[34] Appellants' Opening Br. 20-24.
[35] Appellants' Opening Br. App. at A.167-68 ("And we are challenging their standing because they didn't comply with the Court's order. That they all filed essentially the same information, and that there was no particularized harm alleged.").

Environmental plaintiffs can establish an injury in fact by showing "that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity."[36] Each party must demonstrate that "the alleged environmental injury will actually affect it."[37] But "[t]he mere allegation of a sincere interest in an environmental problem is not sufficient to confer standing."[38] Still, the effect on the party need not be tangible in character.[39]

### a. Concrete and Particularized

An injury in fact requires that the alleged invasion of the protected interest be concrete, particularized, and actual or imminent, not merely conjectural or hypothetical.[40] A generalized grievance held by the general population is no basis for standing.[41] Nonetheless, "the fact that a grievance is widely held does not make

---

[36] *Food & Water Watch v. Del. Dep't Nat Res. & Envtl. Control*, 2018 WL 4062112, at *5 (Del. Super. Aug. 24, 2018) (quoting *Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000)).

[37] *Oceanport Indus.*, 636 A.2d at 905 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990)).

[38] *Id.* (citing *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972)).

[39] *Food & Water Watch*, 2018 WL 4062112, at *5 (quoting *Harvey v. Zoning Bd. of Adjustment of Odessa*, 2000 WL 33111028, at *7 (Del. Super. Nov. 27, 2001)) ("The effect on the plaintiff, however, need not be a property, economic, or tangible interest.").

[40] *Oceanport Indus.*, 636 A.2d at 904.

[41] *See, e.g.*, *Barry v. Town of Dewey Beach*, 2006 WL 4782327, at *4 (Del. Ch. June 8, 2006) ("Put simply, identification by a party merely of a 'common concern for obedience to law' constitutes the quintessential example of an interest that is insufficient to warrant standing.").

it abstract and not judicially cognizable if individual plaintiffs can demonstrate a concrete and particularized injury."[42]

Here, each of the Appellants has stated a concrete and particularized claim that his or her protected interest was invaded. Each of the Appellants submitted a timely statement to the Board which states that the Appellant lives in or regularly visits the area surrounding the proposed construction site and uses the area for outdoor recreation. Each Appellant asserts that construction of the port would directly affect him or her by "add[ing] to existing negative impacts caused by water pollution and loss of aquatic habitat that have severely restricted water recreation activities" and harm the air quality in that area.[43]

Indeed, each of the Appellants claims an imminent injury to his or her personal use of the water and air surrounding the proposed construction site. Their recreational uses, as articulated in their individual Statements of Appeal and Declaration, include walking, hiking, wildlife viewing, fishing, boating, and kayaking.[44] It does not require a logical leap to find that the proposed construction

---

[42] *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1113 (Del. 2003); *see Fed. Election Comm'n v. Akins*, 524 U.S. 24 (1998) ("Thus the fact that a political forum may be more readily available where an injury is widely shared . . . does not, by itself, automatically disqualify an interest for Article III purposes. Such an interest, where sufficiently concrete, may count as an 'injury in fact.'"). Even aesthetic injuries can suffice. In *Dover Historical Society*, the Delaware Supreme Court held that landowners in the Historic District of Dover had "an enforceable right in the 'aesthetic benefit' derived from the Historic District as a whole" that conferred standing to challenge a decision of the Planning Commission. 838 A.2d at 1114.

[43] *See* Appellants' Opening Br. App. at A.73-93.

[44] *See id.*

11

will have an immediate effect on the recreational uses stated by the Appellants. Hence, the Appellants' stated connections to the natural resources in the area are neither abstractions nor mere allegations of sincere environmental concerns. And the fact that the individual Appellants raise similar grievances does not make those grievances abstract or non-judicially cognizable. The injuries alleged by the Appellants are sufficiently concrete and particularized to confer standing to challenge the Secretary's Order.

### b. Actual Connection

To establish a claim for an injury in fact, there must also be some "actual connection between the injury and the conduct complained of."[45] That is, the alleged injury must be "fairly traceable" to the challenged action, not the result of an independent action by a third party.[46]

The Appellants argue that their alleged injuries, including reduced air quality and outdoor recreation opportunities in the area near Fox Point State Park, are directly connected to the Secretary's Order. DNREC argues, in turn, that the Appellants' individual Statements of Appeal and Declaration submitted to the Board failed to meet the requisite standard.[47]

---

[45] *Oceanport Indus.*, 636 A.2d at 904.

[46] *Food & Water Watch*, 2018 WL 4062112, at *3.

[47] Appellants' Opening Br. App. at A.168 ("And we are challenging their standing because they didn't comply with the Court's order. That they all filed essentially the same information, and that there was no particularized harm alleged. So going through the standard provided by *Nichols v. [State] Coastal Zone Industrial Control Board* that they have suffered an injury-in-fact that's

The record shows that each of the Appellants has stated a claim for an injury that is fairly traceable to the challenged Secretary's Order. Each Appellant alleges that he or she will imminently endure decreased air quality and outdoor water recreation opportunities if the port is constructed. The Secretary's Order determines whether and how this construction proceeds. Further, no independent action by any third party severs this connection between the injuries and the Secretary's Order. Accordingly, for standing purposes, each of the Appellants has established an actual connection between an alleged injury and the Secretary's Order. Each Statement of Appeal and Declaration alleges an injury that is concrete and particularized, imminent, and actually connected to the Secretary's Order, such that each Appellant has stated a claim for an injury in fact. Hence, each Appellant has satisfied the first step of the *Data Processing* test.

## 2. Within the Zone of Interests

Second, each party must possess an interest that is "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question."[48] Courts consider the primary purpose or goal of a statute to determine which zone of interests it protects.[49]

---

concrete and particularized, that their injury is fairly traceable to the action that's being challenged, and that the Board has the ability to remedy that harm.").

[48] *Oceanport Indus.*, 636 A.2d at 900.

[49] 7 *Del. C.* § 7201 *et seq.*; 7 *Del. Admin. C.* § 7504. For instance, "the statutory purpose of the Coastal Zone Act . . . is to prohibit the construction of new heavy industry along the coast, outside

The Appellants argue that their interests fall within the zone of interests protected by the Subaqueous Lands Act and the Regulations Governing the Use of Subaqueous Lands.[50]

The statute at issue in the Secretary's Order, challenged by the Appellants, is the Subaqueous Lands Act, 7 *Del C.* § 7201 *et seq.* The purpose of the statute is:

> to empower the Secretary to deal with or dispose of interest in public subaqueous lands and to place reasonable limits on the use and development of private subaqueous lands, in order to protect the public interest by employing orderly procedures for granting interests in public subaqueous land and for issuing permits for uses of or changes in private subaqueous lands.[51]

The Delaware Supreme Court has stated that the purpose of the Subaqueous Lands Act is "the protection of the environment."[52] Hence, the zone of interests protected by the Subaqueous Lands Act includes interests in environmental protection.

That said, the Supreme Court has repeatedly emphasized that a party's connection to the State of Delaware as a landowner, resident, or citizen of the State is a relevant consideration for determining whether that party has standing to appeal an administrative agency decision. This is because the interests of parties without

---

of the Port of Wilmington, with the exclusion, however, of non-conforming uses in operation as of June 28, 1971." *Oceanport Indus.*, 636 A.2d at 907 (citations omitted).

[50] DNREC does not offer a direct response to this argument in its Answering Brief.

[51] 7 *Del. C.* § 7201.

[52] *Oceanport Indus.*, 636 A.2d at 906 ("It is indisputable that the goal of the relevant statutes is the protection of the environment.").

such a connection to the State are arguably outside the zone of interests to be protected by most Delaware state statutes and constitutional guarantees.

For instance, in *Dover Historical Society v. City of Dover Planning Commission*, the Delaware Supreme Court found that the appellants, residents of the Historic District of Dover, had standing to challenge an order of the City of Dover Planning Commission, which had issued an architectural review certificate for new construction in the Historic District. The Supreme Court found that whether the appellants' interests were substantially affected by the Commission's order related in part to each appellant's status as a Delaware landowner or resident. The Supreme Court emphasized that these appellants were "owners of land in the Historic District of Dover" who had asserted injuries that would imminently affect "their own backyard."[53]

Similarly, in *Oceanport Industries, Inc. v. Wilmington Stevedores, Inc.*, while the Delaware Supreme Court found that the economic interest of a corporate appellant to the Environmental Appeals Board was not within the zone of interests protected by the relevant environmental statutes, the Supreme Court noted that the appellant, "as a corporate citizen of the State, has an interest in the protection of its natural resources" for purposes of a determination of standing to bring an appeal to

---

[53] *Dover Historical Soc'y v. City of Dover Planning Comm'n*, 838 A.2d 1103, 1114 (Del. 2003).

15

the Board.[54]  Again, the Supreme Court described the appellant's connection to the State as a relevant consideration for determining whose interests are substantially affected by an administrative agency decision.[55]

Here, Appellants Reed, Cheeseman, Hahn, and Richardson have each demonstrated an interest in the placement of reasonable limits on the use and development of private subaqueous lands.  Each of them separately states that he or she uses the area surrounding the proposed construction site for recreation.  Each claims that this construction would pollute the water, deplenish aquatic habitats, and severely restrict their water recreation in this area.  Further, each of them is a landowner or resident of property in the State of Delaware that is located near the proposed construction site.

However, Appellant Nyahuma's appeal to the Board is distinct from those of the other Appellants.  Unlike the other Appellants, Nyahuma is not a resident or landowner of the State of Delaware.  He resides in Philadelphia, Pennsylvania.  His connection to the State is as a visitor.  Nyahuma has two sisters who live within two miles of the proposed construction site area.[56]  The interest that Nyahuma asserts as a visitor to the State does not establish a sufficient connection to the State for

---

[54] *Oceanport Indus.*, 636 A.2d at 901.
[55] *Id.*
[56] Appellants' Opening Br. App. at A.90-93.

standing purposes. Nyahuma's asserted interest falls outside the zone of interests protected by the Subaqueous Lands Act.

Appellants Reed, Cheeseman, Hahn, and Richardson each hold an interest arguably within the zone of interests intended to be protected by the Subaqueous Lands Act. In contrast, Appellant Nyahuma's interest as a visitor to the State falls outside the zone of interests protected by the Subaqueous Lands Act. Hence, Appellants Reed, Cheeseman, Hahn, and Richardson have satisfied the second step of the *Data Processing* test, but Appellant Nyahuma has failed that step.

### 3. Redressable by a Favorable Decision

Third, the alleged injury in fact must be redressable by a favorable decision by the Board, not merely speculative.[57]

The Appellants argue that their injuries are redressable by a favorable decision from the Board. If the Board found that the Secretary of DNREC should have denied issuance of the certification to DSPC, this would halt construction of the proposed port, which would prevent the injuries alleged by the Appellants.[58] DNREC argues that the Appellants' individual Statements of Appeal and Declaration submitted to the Board failed to satisfy this standard.[59]

---

[57] *Food & Water Watch v. Del. Dep't Nat Res. & Envtl. Control*, 2018 WL 4062112, at *3 (Del. Super. Aug. 24, 2018).
[58] Appellants' Opening Br. 24.
[59] Appellants' Opening Br. App. at A.146 (". . . [T]he appellant's injury must be capable of being remedied by a favorable ruling by the Board.").

It should be without dispute that the injuries alleged by each of the Appellants can be redressed by a favorable decision from the Board. A reversal of the Secretary's Order from the Board would, naturally, stop DSPC from proceeding with construction of the port. This would prevent the reduction in air quality and water recreation opportunities alleged to be threatened by the proposed construction. Accordingly, each of the Appellants has alleged an injury that is redressable, not merely speculative, and each Appellant has satisfied the third step of the *Data Processing* test.

Pursuant to 7 *Del. C.* §§ 6008(a) and 7210 and the three-step *Data Processing* test, Appellants Reed, Cheeseman, Hahn, and Richardson have standing as individuals to appeal the Secretary's Order to the Board. The similarities among the grievances claimed by these Appellants in their separate Statements of Appeal and Declaration do not deprive their individual appeals of legal bases sufficient to support standing. The Board erred as a matter of law in the Board's Order by dismissing the appeals of these four Appellants for lack of standing. Meanwhile, the interest asserted by Appellant Nyahuma fails the second step of the *Data Processing* test, such that the Board did not err as a matter of law by dismissing Nyahuma's individual appeal for lack of standing.

**B. Obligation to Hold a Separate Evidentiary Hearing**

Next, the Appellants argue that the Board erred by failing to hold a full, public evidentiary hearing before reaching a decision on their appeals.[60] DNREC argues that the public hearing held by the Board was statutorily adequate because the Appellants could have made any statements that they desired on the record at the hearing.[61]

The procedural rules that govern a public hearing of the Board are codified at 7 *Del. Admin. C.* § 105. Advance notice of the hearing must be published. Any testimony must be taken under oath. Any party can present competent evidence and request subpoenas for testimony or evidence production.[62] The rules for the admission of evidence at the hearing are permissive.[63] The appellants may appear at the hearing with or without counsel.[64] The rules provide that when the rules do not describe specific guidelines for a process, the Board can proceed in any manner that does not conflict with the other rules. Further, the Board can waive any of these rules when necessary to carry out its statutory function.[65]

---

[60] Appellants' Opening Br.
[61] Appellee's Answering Br.
[62] 7 *Del. Admin. C.* § 105-5.1-.3.
[63] *Id.* § 105-5.4 ("Strict rules of evidence shall not apply. All evidence having probative value commonly accepted by a reasonably prudent person in the conduct of his or her affairs shall be admitted. Objections to the admission or the exclusion of evidence shall be brief and shall state the ground for objection."); *id.* § 105-5.5 ("The Board may exclude any evidence which is plainly irrelevant, immaterial, insubstantial, cumulative or unduly repetitive.").
[64] *Id.* § 105-5.7 ("The appellant shall appear personally or be represented by counsel.")
[65] *Id.* § 105-6.0.

The Board held a public hearing on DNREC's partial motion to dismiss on July 26, 2022. At this hearing, DNREC and the Appellants addressed the issues of standing to bring the appeal and whether the Appellants required legal representation to proceed with the appeal as a single organization.[66] Appellants Reed, Cheeseman, Hahn, and Richardson each raised arguments in support of his or her appeal and against the partial motion to dismiss.[67] Each of the Appellants had the opportunity to make statements on the record and present evidence at this hearing.[68] The Board conducted the hearing according to its own permissive procedural rules. The Board need not have held a separate evidentiary hearing to comply with Delaware law.

## C. Failure to Name a Necessary Party

DNREC argues that the instant appeal should be dismissed because the Appellants failed to name DSPC, a necessary party.[69] The Appellants respond that DSPC is not a necessary party to this appeal.[70]

---

[66] *See, e.g.*, Appellants' Opening Br. App. at A.114 ("MR. RICHARDSON: . . . We have been denied standing, we believe, in obvious error, for each of us have suffered actual imminent, concrete, and particularized injuries, in fact, all traceable to the subaqueous land permits granted by DNREC."); *id.* at A.116 ("CHAIRPERSON HOLDEN: . . . I think it's Delaware law that demands that the community organization has to be represented by a lawyer. I understand you don't agree with that, but I don't believe that's an issue at hand to be resolved here today.").

[67] Appellants' Opening Br. App. at A.143-44 (Reed), A.139 (Cheeseman), A.139-42, A.152 (Hahn), A.133-35 (Richardson).

[68] *See id.* at A.98 ("The moving party will be afforded up to 15 minutes to argue. Parties other than the movant will be afforded up to 10 minutes to respond.").

[69] Appellee's Answering Br.

[70] Appellants' Reply Br.

20

In an appellate proceeding, "all parties to the litigation who would be directly affected by a ruling on the merits" should be made parties.[71] As the Court stated in the June 28, 2023 decision in this case, the instant appeal "is limited to the issue of whether the Individual Appellants have standing to challenge the Secretary's Order before the Board. It is not a dispute over substance."[72] There, this Court found that four entities which had appealed the Secretary's Order separately from the Appellants were not necessary parties to this appeal because the Court's ruling would have little bearing on their interests. This procedural quality to this appeal has not changed. "This appeal is not 'on the merits.' Functionally, it is a procedural challenge."[73]

DSPC holds the certifications at issue in the Secretary's Order. Like the four parties that the Court deemed were not necessary parties in the June 28, 2023 decision, DSPC is not directly affected by the Court's decision on the procedural issues contained in this limited appeal. Hence, the Appellants' decision not to make DSPC a party to the litigation is not fatal to the appeal.

---

[71] *Reed v. Del. Dep't Nat. Res. & Envtl. Control*, 2023 WL 4290254, at *2 (Del. Super. June 28, 2023) (quoting *CCS Inv'rs, LLC v. Brown* (977 A.2d 301, 322 (Del. 2009)).
[72] *Id.*
[73] *Id.*

21

## CONCLUSION

For the foregoing reasons, the Board's Order is **REVERSED in part and AFFIRMED in part.** The Board erred as a matter of law by dismissing the individual appeals of the Secretary's Order by Appellants Reed, Cheeseman, Hahn, and Richardson for lack of standing. However, the Board was correct to dismiss the individual appeal made by Appellant Nyahuma for lack of standing. Further, the Board need not have held a separate evidentiary hearing before issuing the Board's Order. The Court does not hereby decide the merits of any of the Appellants' individual appeals to the Board. The case is hereby **REMANDED** to the Board for findings consistent with this opinion.

**IT IS SO ORDERED,** this 30th day of April, 2024.

_____
Sheldon K. Rennie, Judge